UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                       Case No. 07-CR-333

JOSE ONTIVEROS,

    Defendant.

**SENTENCING MEMORANDUM**

    Jose Ontiveros was convicted on his plea of guilty of receipt of child pornography in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and (b)(1), which carries a statutory penalty range of five to twenty years. Due to several enhancements applicable under the United States Sentencing Guidelines, he faced a guideline range of ninety-seven to one hundred twenty-one months in prison. I concluded, however, that the guideline range was significantly greater than necessary to satisfy the purposes of sentencing in this case and imposed a sentence of sixty months, the mandatory minimum, followed by lifetime supervised release. Pursuant to the suggestion of the Seventh Circuit in *United States v. Higdon*, ___ F3d ___, 2008 WL 2673125, at *1(7th Cir. July 9, 2008), this memorandum will set forth in writing the reasons for the sentence imposed.

I.

    The starting point in determining a proper sentence in federal court is to first calculate the advisory guideline range under the United States Sentencing Guidelines. The court then must

consider the factors set forth in 18 U.S.C. § 3553(a) to determine a fair and just sentence. In this case, the pre-sentence report recommended that the court adopt a guideline range of ninety-seven to one hundred twenty-one months. This range was arrived at based on the conclusion that the offense carried a base level of twenty-two, U.S.S.G. § 2G2.2(a)(2), plus two because the material involved a pre-pubescent minor or a minor who had not attained the age of twelve, § 2G2.2(b)(2), plus two because the offense involved distribution, though not for money or a thing of value, or to a child, § 2G2.2(b)(3)(F), plus two because the offense involved the use of a computer, § 2G2.2(b)(6), and plus five because the offense involved six hundred or more images, § 2G2.2(b)(7)(D). Upon a two-level reduction for acceptance of responsibility, and an additional one-level reduction on motion of the Government, the total offense level equaled thirty. Ontiveros had no criminal history score, which placed him in criminal history category I, resulting in a Guideline range of ninety-seven to one hundred twenty-one months.

II.

As a second step in arriving at an appropriate sentence the district court must consider all of the factors set forth in § 3553(a). *United States v. Harris*, 490 F.3d 589, 593 (7th Cir. 2007), *cert denied*, 128 S.Ct. 963 (2008). Those factors include:

> 1. The nature and circumstances of the offense and the history and characteristics of the defendant;
> 2. The need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner;
> 3. The kinds of sentences available;
> 4. The advisory guideline range;
> 5. Any pertinent policy statements issued by the sentencing commission;

6. The need to avoid unwarranted sentence disparities; and
7. The need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). After considering these factors, the court must impose a sentence that is "sufficient but not greater than necessary" to accomplish the purposes of sentencing.

III.

Unlike many child pornography prosecutions, this case did not begin with an investigation of internet activities of the defendant, resulting in the acquisition of sufficient evidence to establish probable cause to believe he was sending and receiving child pornography and then culminating in the execution of a search warrant. Instead, FBI Special Agent Robert Molina performed a "knock-and-talk" at the Brown County residence of the defendant upon receiving information obtained by law enforcement in southwest Michigan from a family member that Ontiveros had an interest in child pornography. Ontiveros allowed SA Molina to take custody of and search his computer, and agreed to speak with him about his involvement with child pornography. Ontiveros identified his internet service provider and his Yahoo email address and told SA Molina that he bought the computer in approximately March of 2005. He also claimed he had inadvertently received child pornography on his computer when he was using the Internet relay chat program to look for music and adult pornography. As it turned out, however, Ontiveros was minimizing his involvement and in later interviews admitted that he had been more heavily involved in searching for child pornography.

Also, unlike most other cases, Ontiveros had deleted the child pornography he had downloaded before he even realized he was under suspicion for possessing it. Though numerous

3

images were found on his computer, nearly all of them were thumbnail images, meaning they were deleted and waiting to be overwritten. Additionally, the majority of images were either adult pornography or the age of those depicted could not be determined. Twenty-five compact disks were recovered and searched, revealing no child pornography. Ontiveros told SA Molina that he had deleted all of the child pornography from his hard drive and disposed of a compact disk containing child pornography movies he had downloaded before Special Agent Molina's first contact with him in March of 2006 because he wanted to get away from that type of life.

Nevertheless, based upon Ontiveros' own admission that he had downloaded up to thirty movie files and at least one hundred fifty pictures, the five level increase based on the number of depictions was found applicable. Ontiveros also admitted that he had accessed f-servs and downloaded child pornography and movie files in return for uploading at least five child pornography images in return, thus earning him the enhancement for distribution. In fact, based on his admission it would appear that the five-level, rather than two-level, enhancement under § 2G2.2(b)(3)(B) would apply, since he received a thing of value in return, i.e., child pornography. Both parties agreed that the evidence supported only the two-level enhancement, however, and the court accepted their assessment.

The limiting factor in determining an appropriate sentence is the seriousness of the offense. The sentence should be proportional to the crime, or as more commonly expressed, the punishment should fit the crime. A sentence that is too lenient depreciates the seriousness of the offense and fails to promote respect for the law. By the same token, a sentence that is disproportionately long in relation to the offense is unjust and likewise fails to promote respect. As all parties acknowledge, crimes involving the possession and receipt of child pornography are serious. "Young children were

4

harmed to create this material, which is used to feed a market composed of those with the predilections defendant had." *United States v. Hanson*, ___ F. Supp. 2d ___, 2008 WL 2486336, at *3 (E.D. Wis. June 20, 2008). Congress has found that "[t]he illegal production, transportation, distribution, receipt, advertising and possession of child pornography . . . , as well as the transfer of custody of children for the production of child pornography, is harmful to the physiological, emotional, and mental health of the children depicted in child pornography and has a substantial and detrimental effect on society as a whole." Pub. L. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 623. Here, of course, there is no suggestion that Ontiveros was involved in the actual production of child pornography or that he had sexually abused children in the past; nor did he pay for such material and thereby financially contribute to its production. Nevertheless, Congress has noted that "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." *Id.* And the fact that by his own admission, Ontiveros uploaded at least five child pornography images to an f-serv to receive child pornography images in return means that he did more than just view already existing child pornography; he distributed it to others. Even where such distribution is not for monetary gain or to children, it is an aggravating factor that must be considered. The seriousness of the offense thus clearly calls for prison as Congress has mandated. The question presented here is whether a sentence in excess of the mandatory five years is warranted.

In concluding that it is not, I have considered the fact that the defendant had deleted the material from his computer and was attempted to extricate himself from involvement in the offense before the attention of law enforcement was focused on him. It is typical to see a defendant change his behavior after he is caught or has reason to believe he is under investigation. That is not what

5

occurred here. Ontiveros had no reason to suspect he was under investigation when he deleted the child pornography from his computer in an attempt to "get away from that type of life." (PSI ¶ 21.) This behavior suggests that he is sincere is his remorse and poses less of a risk of re-offending.

The fact that Ontiveros was also cooperative with SA Molina and consented to his taking custody of and searching his computer without a warrant is also significant. Because of the fact he had deleted the contraband, law enforcement would have had a more difficult, if not impossible, task to obtain a conviction without his admissions to SA Molina. This cooperation also suggests remorse and a desire to change that bodes well for rehabilitation. Having already deleted the material before SA Molina appeared at his door, a more sophisticated suspect might have refused to cooperate and quickly attempted to destroy whatever evidence of the crime remained.

The conclusion that Ontiveros does not pose a significant threat of re-offending or otherwise endangering the public is also supported by the absence of any criminal record. At the time of sentencing, Ontiveros was twenty-six years old. Although he had a prior citation for possession of an airgun in connection with shooting a paint ball gun at a state park, the citation did not result in any criminal history points. The Presentence Investigation Report revealed no other involvement with law enforcement, other than a couple of minor traffic citations. Accordingly, his criminal conviction score is zero, placing him in criminal history category I. This is a person who has not shown by his prior conduct that he is in need of incarceration to prevent him from engaging in criminal conduct.

Ontiveros also had a history of steady, albeit low-level, employment, most recently at a casino and as a customer service representative at a telemarketing facility. A high school graduate, he was born in Kalamazoo, Michigan, the fourth of seven children and, though not close to any of

6

his siblings, remained close to his parents. His parents were supportive and appeared in court both for the plea and sentence. He is single and never married, although he does have one daughter, a child age ten who resides with her mother in Michigan. The defendant had a two-year relationship with the mother of the child beginning when he was fifteen. She became pregnant but the relationship eventually broke up and she is now married to another person. Prior to sentencing, the defendant was paying child support at a rate of $314.00 per month which was taken directly from his paycheck. It thus appears that but for this offense, his life had been predominantly law abiding.

Ontiveros reported moderate use of alcohol, but not to the point of intoxication, and only sporadic use of controlled substances in the past. Although he had some mental health counseling during his teen years and took Prozac for depression, Ontiveros had never been institutionalized for any sort of mental health or emotional problems. He had some counseling at age fourteen after a note he wrote to a friend discussing his thoughts about suicide was discovered, but he denies that he never had any intention or plan of actually committing suicide. Currently, he reports that he is in good mental health and is not on any medication. These facts are also indications of an individual with a low risk of recidivism and for whom lengthy incarceration is not needed for the protection of the public.

This is not to say that Ontiveros is without problems. The defense submitted a psychological evaluation which was performed by Dr. Charles Lodl and completed on June 30, 2008. Dr. Lodl concluded that the defendant met the criterial for adult anti-social behavior, which referred to his illegal possession of child pornography in the absence of a paraphilic or personality disorder. His sexual interest testing indicated a range of interest across gender and age. His responses suggested that his strongest interests are with adolescent and adult females, which Dr. Lodl thought contrary

7

to his stated inclinations and past behavior. His responses also indicated interest in adolescent males and elementary aged males. Dr. Lodl found the variety of interests, along with other test results, indicative of psychosexual immaturity. Based upon his examination, Dr. Lodl stated he could not conclude that the cause of Ontiveros' behavior was a deviant sexual arousal pattern or long-standing personality characteristics, but nevertheless noted there were aspects of his personality style, i.e. his ability to minimize important issues and set them aside, then delay or procrastinate in response to them, that caused difficulties for him. From the available collateral information and the presentation of the defendant, and considering the research about men who use the Internet for sexual activity, which includes juveniles, Dr. Lodl's clinical impression is that the defendant demonstrates a "moderate pretreatment risk for future online pornography use." (Doc. # 21 at 9.) With respect to actual contact behavior, however, Dr. Lodl concluded that Ontiveros is a low risk for such sexual behavior. (*Id.*)

The very nature of the crime, as well as the results of this testing, warrant concern about the risk Ontiveros could pose to children. While the government has not argued that Ontiveros poses a risk of actually sexually assaulting children, and none of his previous employment or relationships suggest an effort to do so, the mere fact that he apparently found such material stimulating is reason for concern. Of course, the fact that a person was stimulated by digital depictions of child pornography does not mean that he has or will in the future seek to assault a child. Ontiveros, like all human beings, has free will, and neither a psychologist, nor a judge, can predict what a person will choose to do in the future. A court should exercise caution to avoid imposing a sentence for a crime some fear a defendant could commit in the future, instead of for the crime he actually committed and for which he is before the court. All this being said, the absence of any history of

8

such conduct and Dr. Lodl's conclusion that he poses a low risk of committing a contact offense lead me to conclude that any risk that may exist in this regard should be addressed by lifetime supervised release following his term in prison with a condition that he not have unsupervised conduct with children. This is consistent with Dr. Lodl's conclusion that "men with this profile are generally supervised and treated through community programing." (*Id.*)

Deterrence is also an important factor to consider, especially in cases of this kind involving serious criminal conduct of a kind that requires planning and deliberation. One of Congress' primary goals in enacting stringent penalties even for simple possession of such materials, it seems clear, is to deter such behavior, to increase the punishment to a sufficient level so that no rational person would think it worth the risk of attempting to acquire it. In this way, the demand for such material would be reduced thereby reducing the incentive to produce and supply it. As the Seventh Circuit observed in vacating a sentence in a similar case:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded-both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more that will be produced . . . . . Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so the more will be produced.

*United States v. Goldberg*, 491 F.3d 668, 672 (7th Cir. 2007) (citations omitted).

But in *Goldberg*, the district court had imposed a nominal sentence of only one day. Here, the mandatory minimum sentence is five years. A five-year prison sentence is not a "slap on the wrist," especially for someone who has never spent a day in jail, has no history of violent or assaultive conduct, had discontinued the criminal conduct before any investigation focused on him,

9

and voluntarily provided much of the evidence used to prosecute him. And of course, there are also significant lifetime collateral consequences that flow from the conviction for this offense. Ontiveros will be required to register as a sex offender, which registration makes no distinction between whether the offender actually committed a sexual assault of a child or simply possessed child pornography. The shameful label "Sex Offender" will follow him the rest of his life and will substantially limit where he will be able to work and even live. Add to this a lifetime under the supervision of a probation agent after his release from prison, which carries the risk of additional incarceration, and it is clear that the sentence imposed in this case offers substantial deterrence both to Ontiveros and anyone else who would consider committing such a crime.

To the extent treatment is needed, a five-year sentence, followed by lifetime supervision, is also sufficient to insure that this need will be met. Five years is a sufficient amount of time to receive treatment offered within the federal prison system, and to the extent further treatment is called for, it can be ordered as a condition of his release. While on pretrial release, Ontiveros has shown himself to be compliant with conditions set by the court, and nothing in his record suggests that he will not fully cooperate in any treatment ordered by the court upon his release.

Ontiveros, like many who have accessed child pornography via their computer, seems not to have initially appreciated the magnitude of the offense he was committing or the risk that he would be caught. The manner in which computer technology and high speed internet access have made such material readily available in the presumed privacy of the home has removed several substantial impediments to seeking out such material that previously existed. No longer must a person travel to the seedy side of town, walk into a dirty book store, make a request for the sordid material to another person from whom one's identity could not be readily concealed, and pay for

10

it. The easy availability of the material at no cost with the click of a mouse, while at the same time preserving one's anonymity, leaves little but one's natural aversion to depictions of the abuse and degradation of children to stand in the way of obtaining it. And as the popular culture has become more and more saturated with a debased concept of human sexuality, this natural aversion in many people seems to have grown weaker.

A further factor seems to be the lack of appreciation of the harm that simply viewing such material does to children. In some respects, the internet seems analogous to a huge file cabinet containing an almost limitless number of documents and other forms of information. Under this view, accessing child pornography can be rationalized as simply pulling out a drawer and simply looking at photo that someone else took in the past. As long as the individual who accesses the pornography is not himself abusing children to produce it, selling it in order to profit from it, or paying for it so as to stimulate demand for it, he can tell himself that he has done no harm to the children depicted. This line of reasoning, of course, is directly contrary to Congress' finding, noted above, that "[e]very instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." Pub. L. 109-248, Title V, § 501, July 27, 2006, 120 Stat. 623. And it also ignores the fact that further demand for such material is fueled by those who seek it out and share it with others. But these harms are indirect and abstract, and thus often unappreciated or easily ignored. This is apparently why people who express shock at the idea that they would ever intentionally harm a child can engage in such behavior.

While these changes in technology and the culture, and the lack of appreciation of the harm done to children do not excuse the behavior, they do suggest an explanation for why people such as Ontiveros with no previous history of criminal or abusive conduct seem to be committing such

11

crimes with increasing frequency. They also suggest that with the realization that such conduct is not anonymous, that it carries substantial penalties, and that even simply viewing it does substantial harm to children, first-time offenders such as Ontiveros are unlikely to repeat. Treatment directed to increasing such awareness can be provided within the sentence structure I have ordered.

There remains the factor of the sentence range called for under the United States Sentencing Guidelines. As noted, the Guidelines provide for a range of ninety-seven to one hundred twenty-one months. Although a sentencing court is no longer bound by the Guidelines, it must give them respectful consideration. *Gall v. United States*, ___ U.S. ___ , 128 S.Ct. 586, 594 (2007). Still, it may not presume that a sentence within the guideline range is the correct one. *United States v. Rita*, ___ U.S. ___, 127 S.Ct. 2456, 2465 (2007) (noting that "the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply"). The sentencing court may even conclude that the guideline range fails to properly take into consideration the § 3553 factors in cases where the Guidelines "do not exemplify the Commission's exercise of its characteristic institutional role." *Kimbrough v. United States*, ___ U.S. ___, 128 S.Ct. 558, 575 (2007).

For the reasons set forth by Judge Adelman in his recent decision in *United States v. Hanson*, 2008 WL 2486336, at *4- 6, I conclude that the guideline provisions relating to child pornography offenses of this nature do not reflect the kind of empirical data, national experience, and independent expertise that are characteristic of the Commission's institutional role. The review of the development of those provisions and the history of child pornography legislation described in the recently published paper cited by Judge Adelman indicates that the guidelines for these offenses have been repeatedly raised despite evidence and recommendations by the Commission

12

to the contrary so that now less than 5% of the defendants affected by the changes fall within the classes of mass producers, repeat abusers, and mass distributers that Congress intended to target for the lengthiest sentences. *See* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines,* at 27, *available at* http://www.fd.org/pdf_lib/Deconstructing%20the%20Child%20Pornography%20Guidelines%206.10.08.pdf (June 10, 2008). In this case, as in *Hanson*, factors that are present in almost all current child pornography cases, i.e., use of a computer, number of depictions, operated to increase the guideline range significantly above the mandatory minimum, even for first offenders with no history of sexually exploiting or abusing minors, or producing, marketing or selling child pornography. Under these circumstances, I decline to give the Guidelines controlling weight.

Instead, I have relied upon the more general sentencing factors set forth in 18 U.S.C. § 3553(a). For the reasons set forth above, based upon those factors, I conclude that a sentence of sixty months, followed by a term of supervised release for life, is sufficient but not greater than necessary. In addition to the other conditions of supervision regarding treatment and limitations on use of a computer set forth on the record at the sentencing hearing, the Judgment shall include as a condition that the defendant is prohibited from having unsupervised contact with children.

Dated this   24th   day of July, 2008.

  s/ William C. Griesbach
William C. Griesbach
United States District Judge

13